UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID L. ACCORNERO,

             Plaintiff,                     Civil No. 07-1161-HA

             v.                          OPINION AND ORDER

MICHAEL J.  ASTRUE,
Commissioner of Social Security,

             Defendant.

—————————————————————

HAGGERTY, Chief Judge:

      Plaintiff brings this action requesting judicial review of a decision by the Commissioner of the Social Security Administration (SSA) denying his application for disability insurance benefits (DIB) payments under Title II of the Social Security Act.  He seeks an order reversing the Commissioner's decision and remanding this case for an award of benefits.  For the reasons that follow, this action is remanded for further proceedings.

**ADMINISTRATIVE HISTORY**

      Plaintiff protectively filed his application for DIB benefits on December 2, 2004, and alleged disability beginning on April 1, 1987.  Tr. 48-52.[1]  His application was denied initially

---

1      Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

and upon reconsideration, and plaintiff requested a hearing before an Administrative Law Judge (ALJ). After a hearing, an ALJ concluded that plaintiff was not disabled. Tr. 12-20. After an unsuccessful appeal to the SSA Appeals Council, plaintiff sought judicial review of the SSA's final decision. The Appeals Council denied the request for review, rendering the ALJ's conclusions the Commissioner's final decision. Tr. 5-7. This suit ensued.

**FACTUAL BACKGROUND**

Plaintiff was born in 1949. Tr. 48. He earned a Bachelor's Degree in electronic engineering and a Master's Degree in marriage and family counseling. Tr. 79, 393. Past work experience includes salesperson, engineer, counselor, and instructor. Tr. 94-96.

This court need only summarize details of plaintiff's medical history for purposes of this ruling. In October 2002, Plaintiff was diagnosed with obstructive sleep apnea. Tr. 194.

On January 27, 2005, plaintiff was examined by Jennifer Simpson, M.D. Tr. 174. Doctor Simpson noted that plaintiff had a prior diagnosis of fibromyalgia. Tr. 174, 189-91. Plaintiff reported symptoms such as occasional numbness and tingling, unclear thinking, and widespread pain. Tr. 171. Doctor Simpson observed that plaintiff suffered "widespread tender points," but further testing was necessary to make a complete diagnosis. Tr. 171. She subsequently consented to adding a note on plaintiff's chart records reflecting that plaintiff suffered from fibromyalgia that "can cause severe fatigue and insomnia as well as widespread aching" and that plaintiff cannot "tolerate any significant activity and is completely unable to work due to this." Tr. 172.

Plaintiff was examined by David Sandoval, M.D., on February 18, 2005.  Tr. 207-08.

Doctor Sandoval accepted the diagnosis of fibromyalgia without confirming it because plaintiff

could not afford the testing that such confirmation would incur.  Tr. 207.

On August 4, 2005, Karen Walz, P.T., performed a physical capacity evaluation of

plaintiff.  Tr. 309-11.  She concluded that plaintiff could lift ten pounds occasionally from the

floor to waist level and fifteen pounds occasionally from the waist to eye level.  *Id*.  She

estimated that plaintiff could carry ten to fifteen pounds, sit occasionally and frequently, and

stand occasionally.  Tr. 309.  Plaintiff's lifting ability was placed in the sedentary to light range.

Tr. 310.  Ms. Walz observed that Plaintiff focused "on his somatic symptoms and reported

several times that he had difficulty 'concentrating' or was 'dizzy,' but he demonstrated a good

ability to focus on tasks without additional verbal cues needed and attention to detail during

repetitive/small object handling tasks."  Tr. 310.  She opined that plaintiff could likely perform

part-time sedentary work and transition to full-time work.  Tr. 309.

Plaintiff's sleep apnea was evaluated by Kelly Conrad, M.D., on August 9, 2005.  Tr.

300-06.  Doctor Conrad opined that plaintiff was "obviously functionally disabled."  Tr. 305.

However, the doctor also noted "some secondary gain issues relative to [plaintiff's] request for

disability and it [was] hard to know how much of this [was] real."  Tr. 305.  Doctor Conrad

believed that plaintiff would benefit from being examined by psychiatrist Joseph Barrett, M.D.

Tr. 305.

Plaintiff received a neuropsychological evaluation from William Trueblood, Ph.D., on

August 15, 2005.  Doctor Trueblood concluded that plaintiff's neuropsychological functioning

was likely normal.  Tr. 355.  Noting that the results were "somewhat at odds" with plaintiff's

3  - OPINION AND ORDER

reports of concentration and memory problems, Dr. Trueblood posited that plaintiff might suffer from a conversion disorder or somatization disorder.  *Id.*

Doctor Barrett performed a psychiatric evaluation of plaintiff on October 6, 2005.  Tr. 241-43.  Plaintiff complained of pain and fatigue, and difficulty with memory, concentration, and visual spatial tasks.  Tr. 241-42.  Doctor Barrett diagnosed a "mood disorder in the context of fibromyalgia."  Tr. 243.

Plaintiff returned to Dr. Barrett on On October 19, 2005 reporting muscle tenseness.  Tr. 240.  Doctor Barrett diagnosed "depressive symptoms with obsessive preoccupation on somatic symptoms" and fibromyalgia.  *Id.*  Plaintiff visited Dr. Barrett again two weeks later.  Doctor Barrett consulted with Dr. Sandoval, who expressed doubt that plaintiff had fibromyalgia.  Tr. 239, 274.  Both physicians suspected that a "large psychological factor to the patient's chronic pain" might exist.  Tr. 239.  Doctor Barrett diagnosed "obsessive anxiety in the context of pain disorder."  *Id.*

On November 21, 2005, plaintiff reported to Dr. Barrett again, and the doctor diagnosed a pain disorder with obsessive features.  Tr. 238.  On December 5, 2005, plaintiff reported that physical therapy was improving his pain.  Tr. 237.  Doctor Barrett diagnosed somatic pain disorder with obsessive compulsive features.  *Id.*

Plaintiff reported improvement on December 19, 2005, January 9, 2006, and January 23, 2006.  Tr. 234-36.

On March 6, 2006, plaintiff reported excessive fatigue.  On March 20, 2006, plaintiff provided a positive report.  Tr. 231.  On April 3, 2006, plaintiff described frustration with his health issues.  Doctor Barrett diagnosed a somatic pain disorder.  Tr. 230.

On August 10, 2006, Dr. Barrett wrote a letter to plaintiff's counsel.  The doctor stated that he did "not believe [plaintiff] can sustain employment in any capacity."  Tr. 353.  He opined that the "primary limitation for [plaintiff's] work disability surround his basic level of function. The patient's preoccupation with his physical limitations prevents him from adequately focusing."  Tr. 353.  Other details in plaintiff's medical history will be reviewed as necessary in this ruling's analysis.

## STANDARDS

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability.  20 C.F.R. §§ 404.1520, 416.920; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

First, the Commissioner determines whether the claimant is engaged in SGA.  If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe."  20 C.F.R. § 404.1520(a).  If the claimant lacks this kind of impairment, disability benefits are denied.  20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that

5  - OPINION AND ORDER

the Commissioner has recognized to be so severe that they are presumed to preclude SGA.  *See* 20 C.F.R. § 404.1520(d).  These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").  If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's Residual Functional Capacity (RFC), which is the most an individual could do in a work setting despite the total limiting effects of all the claimant's impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) and Social Security Ruling (SSR) 96-8p.

Upon the establishment of the claimant's RFC, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past.  If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied.  *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four.  Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience.  *Hoopai*, 499 F.3d at 1074-75 (citations omitted).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. *See* 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (citations omitted); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted). This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citations omitted). A decision to deny benefits may be set aside only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Benton*, 331 F.3d at 1035.

7  - OPINION AND ORDER

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ found that plaintiff had engaged in minor SGA since his alleged onset date of April 1, 1987. Tr. 14. He acknowledged that plaintiff had the severe impairment of somatic disorder, but concluded that this diagnosis was "doubtful" and did not meet or equal any listing in Social Security's Listing of Impairments. Tr. 15-16.

The ALJ then found that plaintiff has the RFC to lift 100 pounds or more occasionally and fifty pounds or more frequently, and that he could sit, stand and walk for six hours each in an eight-hour day. Tr. 16. Plaintiff could perform simple and complex tasks for at least two hours at a time. *Id*. The ALJ then concluded that plaintiff was able to perform his past relevant work as a salesperson, a counselor, and electronics instructor. Tr. 20. Accordingly, the ALJ found that plaintiff was not disabled. *Id*.

## QUESTION PRESENTED

Plaintiff contends that this court should reverse the Commissioner's final decision and remand this action for an award of benefits. Plaintiff alleges that (1) the ALJ improperly rejected the opinions of plaintiff's treating psychiatrist Dr. Barrett; (2) the ALJ failed improperly found plaintiff's testimony less than credible; and (3) the ALJ improperly discredited lay testimony.

## DISCUSSION

### 1.    The ALJ's analysis of plaintiff's treating physician

Plaintiff first argues that the ALJ erred by rejecting his treating psychiatrist's opinion, developed over the course of his treatment, that plaintiff suffers from somatoform pain disorder. Tr. 353. The doctor observed:

> Because he is unable to rid himself of somatic preoccupation,
> [plaintiff] is unable to focus his cognitive abilities elsewhere.  In
> fact, in his last year of work, he was only able to log 240 hours.
> He  is easily overwhelmed with fatigue and other somatic
> sensations that he perceives as limiting.  Psychotherapy has not
> been entirely  helpful due to his persistent belief that his problems
> reside in the physical realm.

*Id*.

This medical opinion was discredited by the ALJ.  The ALJ agreed with Dr. Barrett's opinion that plaintiff suffers from "some form of somatoform disorder," but discounted the "severity the claimant alleges and what is endorsed by Dr. Barrett" as being unsupported by the record.  Tr. 19.  The ALJ opted to give Dr. Barrett's opinion "little weight" and the opinion of William Trueblood, which was bolstered by neuropsychological testing, "significant weight."  *Id*. the ALJ noted that plaintiff's complaints fluctuated according to his moods and involvement in activities, and appeared to be inconsistent at times to Dr. Barrett.  *Id*.

The ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and may reject the uncontradicted treating or examining physician opinion by providing clear and convincing reasons, supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995) (ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert opinions); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions).

Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than a reviewing

physician's conclusions.  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Lester*, 81 F.3d at 830.  "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)).  An ALJ need not accept a treating physician's opinion that is conclusory, brief, and unsupported by clinical findings. *Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

However, an ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments.  *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422).

The ALJ considered the essence of Dr. Barrett's opinion: that plaintiff was unable to work because of his preoccupation with his physical limitations, which prevented plaintiff from focusing and concentrating.  Tr. 18.  The ALJ contrasted this with Dr. Trueblood's conclusions, which the ALJ interpreted as showing that "all" of plaintiff's memory and concentration complaints are exaggerated.  *Id*.  Counsel for the Commissioner views the ALJ's greater reliance upon Dr. Trueblood's report as proper, because Dr. Trueblood's opinion was based on objective testing and Dr. Barrett never conducted any objective testing.  Dft.'s Brief at 12-13.

However, a fair reading of Dr. Trueblood's report, found at Tr. 355-60, finds no descriptions of plaintiff's complaints as "exaggerated."  To the contrary, Dr. Trueblood repeatedly observed that there were no indications or suggestions of intentionally poor performance.  *Id*.

Instead, Dr. Trueblood specifically noted that plaintiff's testing was "somewhat at odds" with plaintiff's report of concentration and memory problems.  Tr. 355.  The doctor then immediately proffered several possible explanations for the contrast between test results and plaintiff's reports: plaintiff may notice "mild problems" that are not detected by the testing; plaintiff might experience difficulty focusing only intermittently, such as when his pain level is high; or plaintiff may be "misinterpreting normal inefficiencies in functioning as signifying impairment." *Id*.

Doctor Trueblood was careful to note that test results "raised the possibility of a conversion disorder or somatization disorder," but he declined to offer a basis for such a diagnosis.  The doctor preferred to rule out "medical disorders" first.  Tr. 355-56.

Accordingly, the opinions of Dr. Trueblood, a psychologist who examined plaintiff once, cannot be viewed fairly as conclusions that plaintiff "exaggerated" his complaints, or even as contradicting the observations of Dr. Barrett, plaintiff's treating psychiatrist.  Indeed, Dr. Trueblood's expressions of *uncertainty* about the source and extent of plaintiff's physical symptoms appear to be congruent with the common features of a somatoform disorder.  These include physical symptoms that cannot be explained by a medical condition, a substance, or another mental disorder, and which cause "clinically significant distress or impairment in social, occupational, or other areas of functioning."  DSM-IV at 445.

Nevertheless, an ALJ may discredit the opinions of a treating physician that are unsupported by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003).  The ALJ correctly acknowledged that Dr. Trueblood opined, after conducting various psychological tests, that plaintiff suffered from a mild neuropsychological

impairment.  Tr. 355.  It cannot be disputed that Dr. Barrett's opinions (and plaintiff's physical complaints) were not supported by the objective test results obtained by Dr. Trueblood.

This alone, however, presents insufficient grounds for giving Dr. Barrett's opinions "little weight" and Dr. Trueblood's opinions "significant weight," as the ALJ did.  Tr. 19.

In support of the ALJ's rejection of Dr. Barrett's conclusions, defense counsel relied upon the Ninth Circuit's decision in *Bayless*, which recognized that when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.  *Bayliss*, 427 F.3d at 1216.  While this is true, Dr. Trueblood's report cannot fairly be interpreted as rendering  Dr. Barrett's opinions, which were based upon his long professional relationship with plaintiff, extensive treatment notes, and evident careful medical study, as brief or unsupported.  To the contrary, a more accurate summary of Dr. Trueblood's conclusions is that his test results could not *yet* support plaintiff's complaints, and that further testing was necessary.  Tr. 356.

The ALJ's conclusions demonstrate understandable skepticism regarding whether plaintiff met his initial burdens of proving disability.  However, the ALJ also has "a special duty to fully and fairly develop the record and assure that the claimant's interests are considered." *Hayes v. Astrue*, 2008 WL 686867, *2 (Ninth Circuit March 12, 2008) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam).

Some responsibility to develop the record rests with the ALJ in part because disability hearings are inquisitorial rather than adversarial in nature.  *See Sims v. Apfel*, 530 U.S. 103, 110-11 (2000).  Administrative regulations also mandate the ALJ to look "fully into the issues"

12 - OPINION AND ORDER

at hearings.  20 C.F.R. §§ 404.944 and 416.1444; *see also Pearson v. Bowen*, 866 F.2d 809, 812

(5th Cir. 1989).

Fulfilling the duty to develop the record may compel the ALJ to consult a medical expert

or to order a consultative examination.  *See* 20 C.F.R. §§ 404.1519a and 416.919a.  If the

evidence presented is inadequate to determine disability, the ALJ is required to re-contact

medical sources for additional information.  20 C.F.R. § 416.912(e); *see also Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citation omitted) (the requirement for seeking

additional information is triggered when evidence from a treating medical source is inadequate

to make a determination as to a claimant's disability).

Relatedly, an ALJ must take reasonable steps to ensure that issues and questions raised

during the presentation of medical evidence are addressed so that the disability determination is

fairly made on a sufficient record of information.  *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th

Cir. 1998, as amended Jan. 26, 1999); *see also* 20 C .F.R. §§ 404.1527(c)(3) and 416.927(c)(3)

(explaining how an ALJ may obtain additional evidence where medical evidence is insufficient

to determine whether claimant is disabled); 20 C.F.R. §§ 404.1512(e) and 416.912(e) (obtaining

additional information from treating doctors).

If the record before the ALJ precludes the proper evaluation of the evidence, the ALJ's

duty to further develop the record is triggered.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th

Cir. 2001) ("duty to develop the record further is triggered only when there is ambiguous

evidence or when the record is inadequate to allow for proper evaluation of the evidence")

(citation omitted).

13 - OPINION AND ORDER

The ALJ's failure to better develop the record in the face of uncertain medical evidence cannot fairly be construed as sufficient reasons for attributing little weigh to Dr. Barrett's opinions. These issues compel a remand.

As noted above, 42 U.S.C. § 405(g) provides jurisdiction for this court to review administrative decisions in Social Security benefits cases. Specifically, the first two sentences of Section 405(g) provide that any individual may obtain review of a final decision of the Commissioner of Social Security that is rendered after a hearing to which the individual was a party, irrespective of the amount in controversy. This review is obtained in the district court of the United States for the judicial district in which the plaintiff resides.

The fourth and sixth sentences of Section 405(g) set forth the exclusive methods by which district courts may remand an action to the Commissioner. *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

Sentence four provides that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" and is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (quoting 42 U.S.C. § 405(g) and citing *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)). A plaintiff who obtains a sentence four remand is considered a prevailing party for purposes of attorney's fees even when the case has been remanded for further administrative action. *Id*. (citing *Schaefer*, 509 U.S. at 297-302).

14 - OPINION AND ORDER

The issues presented in this action compel a remand under sentence four. Whether to remand under sentence four for an award of benefits, or for further proceedings, is a matter of judicial discretion. *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000).

A remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. *Holohan*, 246 F.3d at 1210. The rule recognizes "the importance of expediting disability claims." *Id*. In cases in which it is evident from the record that benefits should be awarded, remanding for further proceedings would delay effectuating the primary purpose of the Social Security Act, which is to give financial assistance to disabled persons because they cannot sustain themselves. *Id*.

On the other hand, a decision to remand for further proceedings is appropriate when such proceedings are likely to be useful. *Harman*, 211 F.3d at 1179. In this matter, this court concludes that outstanding issues remain that must be resolved before a determination of disability can be made. Further proceedings will be useful, and I exercise the discretion of the court to remand this case for additional administrative proceedings.

Specifically, pursuant to this remand, plaintiff and Commissioner shall develop the record regarding the extent of plaintiff's somatoform impairment. Upon remand, the ALJ shall obtain updated medical records concerning plaintiff. The ALJ shall also provide plaintiff an opportunity to submit additional medical evidence in support of his alleged limitations.

Additionally, the ALJ shall address and ascertain plaintiff's functional limitations and his assessments in accordance with all applicable administrative and legal standards. Plaintiff shall be permitted to be represented by counsel, present witnesses and evidence, and to refer to and submit into the record all testimony and evidence that has been presented already on his behalf.

15 - OPINION AND ORDER

2.        The ALJ's analysis of testimony

Because the appropriate remedy regarding ALJ's error in improperly discounting Dr.

Barrett's opinions of plaintiff's limitations is to remand this action for further proceedings,

plaintiff's additional arguments that the ALJ erred by giving inadequate reasons for rejecting

plaintiff's testimony are rendered moot.  This court nevertheless notes that the Commissioner's

assertion that the ALJ provided "clear and convincing reasons" for discrediting plaintiff's

statements is rejected.  *See* Dft.'s Brief at 14-16.

Because the ALJ did not find that plaintiff was malingering, the ALJ's reasons for

rejecting plaintiff's testimony must be clear and convincing.  *Moisa v. Barnhart*, 367 F.3d 882,

885 (9th Cir. 2004) (citation omitted); *see also Morgan v. Commissioner*, 169 F.3d 595, 599-600

(9th Cir. 1999).

The ALJ discredited plaintiff in part because Dr. Barrett speculated that plaintiff was

"living a retired lifestyle here in Bend."  Tr. 17.  The ALJ also referred to the fact that plaintiff

married in September 2004.  *Id*.  These reasons fall short of the applicable clear and convincing

standard.  Moreover, the ALJ's analysis of plaintiff's activities (as they pertain to his credibility)

should more clearly reflect that they have been viewed in light of plaintiff's functional

limitations.

Upon remand, the ALJ shall undertake a revised credibility evaluation of plaintiff's past

testimony and any new testimony plaintiff might offer.  The ALJ shall address and give full

consideration to all testimony from plaintiff, as well as any lay testimony presented from others

in support of plaintiff's application for disability benefits, in accordance with the applicable

guidelines of this court and the SSA.

16 - OPINION AND ORDER

**CONCLUSION**

The record of this case has been reviewed fully.  This court concludes that the decision of the Commissioner regarding the application by David L. Accornero for disability benefits must be REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent with this Order and the parameters provided herein.

IT IS SO ORDERED.

DATED this ___24___ day of September, 2008.


　　　　　　　　　　　　　　 _/s/ ANCER L. HAGGERTY_____
　　　　　　　　　　　　　　　ANCER L. HAGGERTY
　　　　　　　　　　　　　　　United States District Judge

17 - OPINION AND ORDER